IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA A. SKIPWORTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-824-BN |
| | § | |
| REVERSE MORTGAGE FUNDING LLC, | § § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Reverse Mortgage Funding, LLC has filed a motion for summary judgment. *See* Dkt. No. 12. Plaintiff Patricia A. Skipworth has not filed a response, and her time to do so has passed.

### **Background**

Plaintiff and her husband took out a reverse mortgage in 2011. They executed a Home Equity Conversion Note in favor of Reverse Mortgage Solutions, Inc. ("RMS"). *See* Dkt. No. 1-2 at 1-14. As security for the Note, they executed a Home Equity Conversion Deed of Trust encumbering real property located at 755 Griffith Avenue, Terrell, Texas. *See id.* at 15-16.

Through a series of conveyances, the Deed of Trust was assigned to Defendant RMF. *See id.* at 2, 4, 17-26. RMS indorsed the Note in blank, making it payable to its bearer. *See id.* at 4. RMF is also the current owner, holder, and bearer of the Note. *See* Dkt. No. 13-1 at 2.

The Skipworths defaulted by failing to pay the ad valorem property taxes assessed against the property and by failing to insure the property against casualty loss. *See id.* RMS provided notice of default and opportunity to cure on November 7, 2014, by certified mail. *See id.* at 27-33, 38.

RMS filed an Expedited Foreclosure Application in Kaufman County, Texas on September 18, 2015. An Agreed Home Equity Foreclosure Order was entered on February 12, 2016. *See id.* at 34-35. The order authorized RMS to foreclose its lien after May 31, 2016. *See id.* at 35.

RMS scheduled a foreclosure sale for July 4, 2017. *See* Dkt. No. 13-2 at 2.

On July 1, 2017, the Skipworths sued RMS in Kaufman County, Texas and secured an ex parte temporary restraining order preventing the sale. *See id.* at 2, 37-44. On October 24, 2018, the state court granted RMS's motion for summary judgment, disposing of all the Skipworths' claims. *See id.* at 45.

Plaintiff filed a Chapter 13 bankruptcy case on June 4, 2018. *See id.* at 45-56. Plaintiff voluntarily dismissed the bankruptcy case on December 13, 2018, acknowledging that she was unable to present a confirmable plan of reorganization. *See id.* at 57-61.

On January 25, 2019, RMS filed suit seeking a judgment authorizing non-judicial foreclosure or, in the alternative, judicial foreclosure of its lien. *See id.* at 62-114. RMS filed a motion for summary judgment but did not pursue it initially because the Skipworths agreed to sign a Settlement Agreement and Release and a Deed-in-Lieu of foreclosure. *See id.* at 118-23, 12-29. The Deed-in-Lieu was signed by

-2-

Plaintiff individually and as her husband's heir and beneficiary. *See id.* at 126. Plaintiff was to vacate the property on September 15, 2019, *see id.* at 126, but she failed to do so. RMS then reset the hearing on its motion, and, on October 4, 2019, the state court entered Final Judgment fixing the amount of the lien at $797,567.18 with interest continuing to accrue, awarding fees to RMS, and authorizing foreclosure. *See id.* at 130-32.

The loan was assigned to RMF on January 28, 2020. *See id.* at 23-26. RMF scheduled the property for sale on April 7, 2020, but it was unable to conduct the sale because of the foreclosure moratorium imposed due to the COVID pandemic.

On November 1, 2021, Plaintiff filed another Chapter 13 bankruptcy case. *See id.* at 133-35. The case was dismissed on January 3, 2022. *See id.* at 135.

RMF noticed the property for foreclosure and scheduled the property for sale on April 5, 2022.

On April 4, 2022, Plaintiff filed this case, alleging RMF did not have authority to foreclose because the statute of limitations had run. *See* Dkt. No. 1-3. Plaintiff also alleges that RMF breached the Note and Deed of Trust by paying property taxes that were the subject of a tax protest action. Plaintiff sues RMF for a declaratory judgment that the statute of limitations has run, breach of contract, violations of the Texas Debt Collections Act ("TDCA") and Texas Deceptive Practices Act ("TDPA"), and unreasonable collection efforts. *See id.*

The scheduled April 4, 2022, sale did not occur.

The property was sold at a foreclosure sale on June 7, 2022.

RMF now moves for summary judgment on all of Plaintiff's claims. *See* Dkt. No. 12.

RMF asserts that Plaintiff's claims fail as matter of law for three reasons. First, RMF's predecessor filed suit for a foreclosure judgment before limitations ran and secured a judgment authorizing foreclosure, preserving its right to foreclose. Second, Plaintiff's contract claims are barred by res judicata because summary judgment was awarded to RMF's predecessor in a suit where Plaintiff's claims were based on the same property tax allegations. Third, Plaintiff cannot bring a DTPA claim because she is not a consumer. RMF also asserts there are no allegations or summary judgment evidence to support Plaintiff's claim for unreasonable collection efforts.

Plaintiff did not file a response to the motion for summary judgment.

The Court now determines that motion for summary judgment must be granted.

**Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact]

could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.

If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated

assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

Plaintiff alleges that RMF's predecessor paid ad valorem property taxes in 2014, then accelerated the Note on November 7, 2014. Plaintiff alleges that this was

improper because the taxes were under protest. Plaintiff also alleges the statute of limitations had run as to RMF's ability to foreclose.

But Plaintiff has not responded to the motion for summary judgment. Plaintiff's failure to respond does not permit the Court to enter a "default" summary judgment. But the Court is permitted to accept RMF's evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). And Plaintiff's failure to respond means that she has not designated specific facts showing that there is a genuine issue for trial on any of his claims. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

I.  <u>The statute of limitations had not run on RMF's ability to foreclose.</u>

Plaintiff's claims for declaratory judgment, violations of the TDCA and DTPA, and unreasonable collection efforts are brought under Texas Civil & Practices & Remedies Code Section 16.035(b), which requires the secured lender to foreclose within four years of accelerating the debt. *See* TEX. CIV. PRAC. & REM. CODE § 16.035(b); Dkt. No. 1-3 at 2 ¶ 11; 3 ¶ 12. Plaintiff alleges that the then-pending foreclosure sale would have been wrongful because RMF attempted to foreclose its lien after the statute of limitations ran.

Plaintiff's reliance on Section 16.035(b) is misplaced. Section 16.035(a), which

applies here, does not require that an actual foreclosure occur within the four-year limitations period. Instead, it requires only that the party seeking foreclosure bring suit not later than four years after the date the cause of action accrues. *See* TEX. CIV. PRAC. & REM. CODE § 15.032(a).

Under Texas law, an action for foreclosure of a real property lien must be brought within four years of when the cause of action accrues. *See* TEX. CIV. PRAC. & REM. CODE § 16.035(a). After the four-year limitation period expires, the real property lien becomes void and thus may no longer be foreclosed upon. *See id.* § 16.035(d). If, as here, the note contains an option to accelerate payment upon default, "'the action accrues ... when the holder actually exercises its option to accelerate.'" *Alcala v. Deutshe Bank Nat'l Trust Co.*, 684 F. App'x 436, 438 (5th Cir. 2017) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)); Dkt. No. 13-2 at 7 ¶9.

RMS accelerated the loan's maturity on November 7, 2014, *see id.* at 27, which triggered the running of the statute of limitations.

On June 4, 2018, Plaintiff filed bankruptcy, s*ee id.* at 46. The Bankruptcy Code provides for an automatic stay of any judicial "proceeding against the debtor." 11 U.S.C. § 362(a)(1). Section 362(a)(3) provides that the filing of a petition "operates as a[n] [automatic stay] applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate" or "to obtain or exercise control over the property of the debtor." *Matter of S.I. Acquisition, Inc.* 817 F.2d 1142, 1148 (5th Cir. 1987) (quoting 11 U.S.C. § 362(a)(3)). The bankruptcy case was dismissed

-11-

on Plaintiff's motion on December 13, 2018. *See id*. at 55. The automatic stay tolled the running of the statute of limitations for 193 days. *See HSBC Bank USA N.A. v. Crum*, 907 F.3d 100, 206 (5th Cir. 2018).

Absent the bankruptcy filing, the statute of limitations would have run on November 7, 2018, four years after the initial acceleration. Adding the 193 days the statute was tolled extends the limitations date to May 17, 2019.

On January 25, 2019, RMS filed a lawsuit seeking a judgment permitting foreclosure or, in the alternative, judicial foreclosure. *See id*. at 62. This filing occurred before the statute of limitations ran on May 18, 2019. On October 4, 2019, the state court granted RMS's motion for summary judgment and entered a final judgment authorizing RMS to proceed with foreclosure. *See id*. at 130-32.

The Court grants summary judgment on Plaintiff's claims for declaratory judgment, violations of the TDCA and DTPA, and unreasonable collection efforts because the statute of limitations had not run before RMS filed the 2019 lawsuit, and the October 4, 2019, final judgment preserved RMF's right to foreclose.

II.     <u>The breach of contract claim is barred by res judicata.</u>

Plaintiff asserts a claim for breach of the Note and Deed of Trust but does not specify the act or omission on RMF's part that constitutes a breach of these documents. Plaintiff's original petition centers on two allegations: (1) RMF is attempting to foreclose despite being barred by limitations from doing so, and (2) RMF's predecessor paid ad valorem taxes while Plaintiff was protesting those taxes.

As the Court determined above, Plaintiff's limitations claims fail as a matter

of law.

Plaintiff's claims relating the payment of ad valorem property taxes on the property are barred by res judicata.

The doctrine of res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). In the Fifth Circuit, res judicata is appropriate if four conditions are met: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *See id.; see also Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).

On July 1, 2016, the Skipworth's sued RMS for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 13-2 at 37-44. In their original petition, the Skipworths alleged that (1) the Griffith Avenue property is the subject matter of the lawsuit; (2) on May 20, 2011, they executed a Texas Home Equity Security Instrument, (3) on November 7, 2014, they received notice that they were in default because the property taxes were unpaid and the hazard insurance had lapsed; (4) they had protested the assessment of the ad valorem taxes based on Mr. Skipworth's status as a disabled veteran; (5) they notified RMS of the ongoing tax appeal process; and (6) RMS paid the taxes over their protests, declared a default, and initiated foreclosure proceedings. *See id.* at 38-39, ¶¶6-11.

The parties in the two lawsuits are not identical, but they are in privity. Plaintiff and RMS were parties in the 2016 lawsuit. As RMS's successor in interest, RMF is in privity with a party to the prior lawsuit. *See E.E.O.C. v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007).

The 2016 lawsuit was filed in the 86th District Court of Kaufman County, Texas, which is a court of competent jurisdiction. The Kaufman County Court entered a final summary judgment ordering that Plaintiff and Mr. Skipworth take nothing by their claims. *See id.* at 45. The Skipworths did not appeal, and the judgment became final.

The same claims are involved in both lawsuits. In the prior lawsuit, the Skipworths sued RMS for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 13-2 at 37-44. The Skipworths contended that RMS violated Paragraph 9(b)(iii) of the Deed of Trust by accelerating the loan while their good faith property tax protest was pending. *See id.* at 39 ¶11. In this lawsuit, Plaintiff urges a claim for breach of contract based on the same allegation that RMS accelerated the lien while she was protesting the amount of the ad valorem taxes. In both lawsuits, Plaintiff acknowledges the hazard insurance had lapsed.

Because Plaintiff previously sued complaining about the secured lender's payment of property taxes and final judgment on the merits was entered against her, any claim in this lawsuit premised on RMC improperly paying ad valorem property taxes in 2014 is barred by res judicata.

III. <u>Plaintiff was not a "consumer" under the DTPA.</u>

Plaintiff alleges that she "is a consumer as defined under the DTPA because Plaintiff's objective in acquiring the Loan from Defendant was the purchase of Plaintiff's home." *See id.* at 4 ¶17. But the Deed of Trust says otherwise.

Plaintiff pledged the Griffith Avenue property to secure a reverse mortgage. The Deed of Trust states prominently that "THIS DEED OF TRUST SECURES A REVERSE MORTGAGE." *Id.* at 6. A reverse mortgage is a type of home equity loan intended to provided seniors, age 62 or older, the resources needed to remain in their homes for the rest of their lives. So called because the mortgage's payment stream is said to flow in reverse, a reverse mortgage converts the homeowner's home equity into annuity-like periodic payments, or advances, that the lender makes to the homeowner over her remaining life. *See Roberson v. Bank of New York Mellon*, No. 3:17-CV-00190, 2018 WL 3091209, at *9 (S.D. Tex. May 23, 2018).

To qualify as a consumer under the DTPA, "a person must have sought or acquired goods or services by purchase or lease," and "the goods and services purchased or leased must form the basis of the complaint." TEX. BUS. & COM. CODE § 17.45(4); *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 587-88 (N.D. Tex. 2013).

Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA. *See Walker v. Fed. Deposit Ins. Corp.,* 970 F.2d 114, 123 (5th Cir.1992) (citing *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174-75 (Tex. 1980)). And, "[a]lthough one who borrows money to buy a house can be a consumer under the DTPA because that person's

objective is to buy a home, subsequent actions related to mortgage accounts – for example, extensions of further credit or modifications of the original loan – do not satisfy the 'goods and services' element of the DTPA." *Swim v. Bank of Am., N.A.,* No. 3:11-cv-1240-M, 2012 WL 170758, at *6 (N. D. Tex. Jan. 20, 2012).

The summary judgment evidence shows that the Skipworths refinanced in 2011 by entering into a reverse mortgage loan agreement with RMS. There is no evidence that the Skipworths' objective in obtaining the reverse mortgage was the purchase or lease of a good of service. To the contrary, Plaintiff's DTPA claim pertains to the reverse mortgage, which is not a good or service.

IV. RMF's collection efforts were not unreasonable.

Under Texas law, unreasonable collection is a common law intentional tort. *See Kopin v. Wells Fargo Bank, N.A.*, No. 4:11-cv-751, 2013 WL 74601, at *6 (E.D. Tex. Jan. 4, 2013) (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. – Dallas 2008, no pet)). "The elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.* And so the reasonableness of conduct is judged on a case-by-case basis. *See id.*

To support a claim of unreasonable collection efforts, plaintiff must allege facts that amount to a course of harassment by the defendant that was "willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Fath v. BAC Home Loans*, No. 3:12-cv-1755-O, 2013 WL 3203092, at *14 (N.D. Tex. June 5, 2013) (quotation and citations omitted).

Plaintiff alleges that RMF used deceptive means to collect a debt by assessing

-16-

late charges and penalties and improperly placing the property in foreclosure, which slandered her credit reputation, defamed her credit, and exposed her family to ridicule in the community. *See* Dkt. No. 1-3 at 6. Plaintiff alleges that she has suffered economic damages, extreme and severe mental anguish, and emotional distress. *See id.*

But Plaintiff does not allege – and there is no summary judgment evidence that shows – any alleged conduct of RMF or predecessors was "willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Fath*, 2013 WL 3203092, at *14; *cf. Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 818 (N.D. Tex. 2012) (concluding that defendant's alleged failure to give the plaintiff a chance to reinstate or cure the default; intentionally misleading and delaying the plaintiff to the point of foreclosure; assessing late charges, penalties, and other additional charges; and improperly placing the property in foreclosure did not constitute unreasonable collection efforts).

V.      RMF is entitled to attorneys' fees.

RMF asserts that it is entitled to attorneys' fees under the Note, *see* Dkt. No. 13-2 at 2 §(C), and Deed of Trust, s*ee id.* at 2 §(C), 8 §8; *see also* 24 C.F.R. § 203.552(a)(13) (providing that mortgagee may collect reasonable and customary fees from the mortgagor when permitted by the security instrument); *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037-38 (5th Cir. 2014) ("Under Texas law, attorney's fees are recoverable … if authorized by statute or contract.).

"This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman*

*v. Cty. Of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith v. Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 490 (5th Cir. 2012). The parties seeking reimbursement of attorneys' fees bear the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.,* 559 U.S. 542, 552 (2010). "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in [*Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714 (5th Cir. 1974)]." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

RMF seeks recovery of $4,080 for 13.6 hours of work performed by attorneys at an hourly rate of $300. The request for attorneys' fees is supported by the Affidavit of Damian W. Abreo, RMF's lead attorney in this case. *See* Dkt. No. 13-3. The affidavit is not supported by invoices, but Mr. Abrea provides a detailed narrative of the work performed.

Considering Mr. Abreo's experience and the local market rates, the Court finds that the requested hourly rates of $300 for attorney work is reasonable. Mr. Abreo states in his affidavit that he is Senior Counsel at Hughes Watters Askanse, LLP. He has a long-standing attorney/client relationship with RMF, and, although he usually charges $350 per hour to other clients, he charged RMF $300 per hour in this case. Mr. Abreo has experience in commercial litigation, and real estate and mortgage litigation, and Dominique Varner, the other attorney who worked on the case, is familiar with commercial litigation, mortgage default servicing, and bankruptcy.

Based on the motion for summary judgment and Mr. Abreo's affidavit, the Court finds the appropriate lodestar here to be calculated as 13.6 hours for work performed by attorneys at $300 an hour for a total of $4,080. The Court has considered the *Johnson* factors and finds that none of them weigh in favor of modifying the lodestar.

## Conclusion

The Court GRANTS Defendant Reverse Mortgage Fundings, LLC's Motion for Summary Judgment [Dkt. No. 12], dismisses with prejudice all of Plaintiff Patricia A. Skipworth's claims, and awards Defendant Reverse Mortgage Fundings, LLC $4,080.00 to be paid by Plaintiff Patricia A. Skipworth. The Court will separately enter a judgment.

DATED: October 4, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE